53 N.Y.2d 455 (1981)
S.E.S. Importers, Inc., Appellant,
v.
Frank Pappalardo, Defendant Third-Party Plaintiff-Respondent. Anna Klores, as Executrix of Benjamin C. Klores, Deceased, Third-Party Defendant-Respondent.
Court of Appeals of the State of New York.
Argued June 9, 1981.
Decided July 7, 1981.
Joseph A. D'Addario, Victor Gartenstein and Sanford Silver for appellant.
Thomas G. Sherwood and Vincent M. Albanese for defendant and third-party plaintiff-respondent.
Judges JASEN, GABRIELLI, WACHTLER and MEYER concur with Judge JONES; Judge FUCHSBERG dissents and votes to affirm in a separate opinion in which Chief Judge COOKE concurs.
*458 JONES, J.
Notwithstanding that at the time of closing the seller was unable to convey good title in consequence of a defect in his own title, the buyer is entitled to specific performance *459 where the defect has disappeared at the time of trial and the court can then give an effective judgment for the equitable relief demanded. The buyer's right to specific performance in this circumstance is not lost because the parties expressly agreed in the contract of sale as to the remedies to which the buyer would be entitled in the event the seller was unable to convey good title.
This litigation arises out of a contract executed on March 27, 1978 for the sale to the corporate plaintiff by defendant Pappalardo of real property described as 158-01 Cross Bay Boulevard, Howard Beach, New York, improved with residential and commercial facilities. The seller agreed to convey the fee simple of the premises, free and clear of all encumbrances except as otherwise stated in the contract of sale. Closing was set for July 17, 1978 and the purchase price agreed to was $215,000 with the buyer depositing $21,500 in escrow with the seller's attorney, third-party defendant Klores.
Handwritten on an initialed rider attached to the printed form was a provision that "Purchaser will not be obligated to close title herein until: (a) the below action is determined in favor of the landlord and no appeals will be pending, (b) the tenancy below is terminated, (c) the lease referred to below is terminated and cancelled." The references in this provision were to litigation and a lease described thereafter as a lease on a second floor apartment of the premises to tenants Simonetti and Moscatiello as to which a summary proceeding had been instituted in Civil Court, Queens County, resulting in a final order of eviction and warrant, which was subsequently vacated on application of one of the tenants, but from which vacatur an appeal by the seller was pending in the Appellate Term, Second Department.
The typewritten provisions inserted in the printed form of agreement also included one which stated: "That the purchaser, at least ten (10) days prior to the closing of title, as hereinafter provided for, shall furnish to seller's attorney, a written statement and notice of objections to title, if any, and the parties agree that the seller shall have a reasonable adjournment of the closing of title for the *460 purpose of removing any such objections which they are required to remove under the terms of this contract. If, for any reason not the fault of the seller hereunder, seller cannot convey title in accordance with the terms of this contract, the purchaser shall, at its own election, have the right to accept such title as the seller is able to convey, without any claim on the part of the purchaser for abatement of defects or objections, or the purchaser shall have the right to rescind this contract, upon which rescission, pursuant to this paragraph, purchaser will be entitled to the return of the amount paid at the time of signing of this contract, plus the net cost of title examination, if incurred, in an amount not exceeding the net rates established by title companies operating in the City of New York, and upon such repayment this contract shall be null and void."
No discussion as to a date for closing having previously taken place after execution of the contract for sale, on September 21, 1978 counsel engaged by the seller to replace attorney Klores sent a letter to the buyer's attorney scheduling the closing for September 29, 1978 and advising that delivery of the deed would then be tendered and that failure of the buyer to close title would constitute a default such that the seller would consider the contract terminated. The buyer's attorney responded promptly, referring to the contract provision that the buyer need not close until the Simonetti-Moscatiello tenancy was terminated and requesting that there be furnished to him no later than the day before closing either a judgment determining the Civil Court action in favor of the seller or a written surrender of the lease by the tenants.
Although neither of the requested documents had been delivered as requested, the buyer's attorney nonetheless appeared at the time and place designated for the closing, exhibiting a check with which he was prepared to make payment of the amount due and to accept title if the seller could deliver title in accordance with the terms of the contract. When it appeared that the seller was unable to dispose of the Simonetti-Moscatiello tenancy title criticism, the buyer refused to complete the transaction stating a formal objection that the tenants were still in possession *461 under the lease and the premises were therefore not legally vacant.[1]
Within two weeks thereafter, on October 12, 1978 plaintiff commenced this specific performance action seeking a judgment directing that defendant convey a good and marketable title in accordance with the terms of the agreement or, in the event the seller could not deliver such title, delivery of such title as possible with an abatement of the purchase price on account of the seller's deficiency together with punitive damages. Defendant's answer denied that it had failed to tender good title in accordance with the purchase contract on September 29, 1978, alleged that the Simonetti-Moscatiello lease had been terminated prior to the closing date and asserted a counterclaim for damages occasioned by the buyer's refusal to consummate the sale on October 20, 1978 (alleged to have been later fixed by the seller for closing), as well as for punitive damages.
On the trial of the specific performance action in October, 1979 the file of the Civil Court litigation involving the Simonetti-Moscatiello lease was received in evidence; it disclosed that although the landlord had secured reargument of the vacatur of the eviction order, on reargument the disposition had been adhered to, and the appeal taken by him to the Appellate Term had been dismissed for nonprosecution. Trial counsel for plaintiff, however, aware that, subsequent to the dates set for closing, the tenants had executed a surrender of lease to defendant, requested the court to direct defendant to produce the surrender instrument. The application for the order to produce was grounded on the theory that if defendant had good title at the time of trial specific performance should be ordered, plaintiff's counsel asserting that "the court of equity decides the case as of the time the case is before it". In response to the court's direction, defendant produced a surrender of lease dated April 15, 1979, executed by the tenants, Simonetti and Moscatiello, surrendering all rights under the lease to defendant. *462 This surrender of lease was thereupon introduced and received in evidence.
The Justice before whom the present action was tried found that, by reason of the fact that the Simonetti-Moscatiello lease was outstanding at the time of the closing, the buyer, by the terms of the contract, was under no obligation to accept the title tendered. The court further concluded that, because the seller's inability to convey good title was not the result of bad faith, the buyer was entitled only to a return of his down payment and reimbursement for title and examination costs, holding that by instituting a suit seeking abatement of price in contravention of the terms of the contract of sale the buyer had deprived itself of the right to compel the seller specifically to perform. The counterclaims pleaded in the answer were dismissed. The disposition as to the substantive rights between the buyer and seller was affirmed by the Appellate Division which modified the judgment only to the extent of ordering that the return of the buyer's down payment be made directly to it, rather than through the seller, by the executrix of the estate of the escrowee Klores, who had been joined by the seller as a third-party defendant in the action. Because plaintiff is entitled to conveyance of the subject property in accordance with the terms of the agreement between the parties, and defendant is presently able to make such conveyance, the order appealed from must be reversed and specific performance decreed.
The seller's argument, pressed so vigorously on the appeal in our court, that the Simonetti-Moscatiello lease had been terminated and that the still unresolved Civil Court eviction action did not impair the title which he could convey on September 29, 1978, the date set for closing, is foreclosed by the factual findings of the trial court, now affirmed at the Appellate Division, that the lease was then outstanding and that the condition specified in the contract of sale had not been satisfied. The seller's claim that the tenats had physically departed the premises in December, 1977 and abandoned the lease months before the execution of the contract was inadequate, as the courts below impliedly found, to establish termination of the tenancy and compliance *463 with the contract. That the parties themselves did not regard the tenants' prior conduct, assuming it was as defendant claimed, as already having effected a cancellation of the lease is apparent from the fact that termination of the tenancy was nonetheless expressly made a condition precedent to plaintiff's obligation to purchase the premises. On the day the contract was executed there was then in effect the Civil Court order granted at the behest of one of the tenants vacating the prior eviction order; that after the date of execution of the contract of sale the seller still regarded that order of vacatur as significant is demonstrated by his subsequent application for reargument made to Civil Court.
The conclusion that the title tendered by the seller on September 29, 1978 was not in conformity with the terms of the contract of sale was only the beginning of the adjudication of the rights of the parties. The courts below erred in their completion of that adjudication. It was first necessary to adjudge the entitlement of the buyer to performance of the agreement and to a conveyance by the seller of title to the premises, and then to determine whether the specific provision as to available remedies in the event the seller was unable to convey good title operated in this particular case to deprive the buyer of what would otherwise have been the relief to which it would be entitled.
The seller contracted to convey title in fee simple except as otherwise stated in the contract. It was this obligation which the buyer sought to enforce, offering, of course, in the event of performance by the seller fully to discharge the obligations on its part to be performed under the terms of the contract of sale, i.e., payment of the purchase price in full.[2] The buyer's right to judicial relief for the enforcement of his rights under the contract of sale of March 27, 1978 accrued when on September 29, 1978 the seller failed to perform his obligations under the contract. The seller's inability then to have cleared the objection to title based on the outstanding Simonetti-Moscatiello tenancy was in no *464 way attributable to the buyer, and that outstanding tenancy had not been excepted in the description of the title which the seller agreed to convey. On the other hand, and consistently, its removal had expressly been made a condition precedent to the buyer's obligation to purchase the premises.
Although it is proper to say that the buyer's right to judicial enforcement of its rights under the contract had accrued when it commenced the present action, its entitlement to the particular remedy sought for breach of the contract  specific performance  could not be determined until such time as the buyer's substantive rights had been resolved and the occasion arose for the court to fashion the appropriate remedy for their enforcement.
Notwithstanding that a buyer may have established his substantive right to enforcement of a contract for the sale of real property, where the remedy sought is specific performance rather than damages, the courts will not grant the equitable remedy unless it appears that it would lie within the capability of the seller to comply with the court's direction for such affirmative relief. The court will not make what may prove to be a futile order. Hence, if it appears that the seller does not have the title that he agreed to convey, the court will not direct that he convey such title unless the court is satisfied that it lies within his power (or within his power as supplemented by that of the court) to enable himself to do so. That the seller may not have been able to convey good title when the action was commenced is irrelevant if he is able to do so when the court makes its order. So here, that this seller could not have conveyed good title in September, 1978 in no way operated to foreclose a direction for specific performance when at the time the court order was actually to be made it had been established that the infirmity of the Simonetti-Moscatiello tenancy had been removed, the seller could convey good title, and the court could make an effective order.
The principle and its rationale are well stated in the authoritative text, Warren's Weed New York Real Property: "It is a general rule in equity that the specific performance of a contract to convey real estate will not be granted *465 where the vendor in consequence of a defect in his title is unable to perform. However, the rule has no application to a case where the defect has disappeared at the time of the trial and the court can then give an effective judgment for the equitable relief demanded. A plaintiff in an equity action should not lose his day in court because of any defense interposed to his action, if at the time of the trial, the facts are such that if he then commenced his action, he would be entitled to the equitable relief sought. If a vendor has no title or a defective title to land which he contracts to sell, and subsequently obtains a perfect title, he can be compelled by his vendee to perform his contract.
"There is no reason why the vendor should not be compelled to perform if he perfects his title while the action for specific performance is pending. A perfect title by the vendor is not necessary to the vendee's cause of action, and he is just as much entitled to the equitable relief, and the equity court is just as competent to give it, whether the title of the vendor was perfected before or after the commencement of the action. Furthermore, where objections to title are cured prior to determination on the trial, a party may be required to specifically perform his contract." (Vol 5 [4th ed], Specific Performance, § 9.05.)
The principles enunciated by the text writer were stated and applied by this court long ago in Haffey v Lynch (143 N.Y. 241) in which the affirmance of a denial of a buyer's request for specific performance was reversed and plaintiff was adjudged to be entitled to the relief requested where the defect in title had been cured by the time the action came to trial.[3] This was precisely the legal premise on which plaintiff's counsel in the case now before us sought and obtained production of the surrender of lease from defendant's files and its introduction in evidence at trial.
To the seller's claim that allowing specific enforcement *466 of a contract, full performance of which cannot be rendered at the time for closing but which subseqeuntly becomes possible, permits a purchaser by delaying commencement of his action unjustly to speculate to the seller's disadvantage, to tie up the property by the filing of a notice of pendency and to exploit rising property values, the response in the present case is obvious. Here there was neither delay nor unjust advantage taken of defendant. The buyer's action was instituted within two weeks of the aborted closing, and the seller can scarcely complain of unwarranted disadvantage to him when the judgment of specific performance required nothing more than that he carry out the bargain to which he had agreed.
It remains then only to consider whether the express provision included by the parties in this particular contract of sale prescribing the buyer's remedies in the event the seller should be unable to convey good title operated to deprive this buyer of the relief to which it would otherwise be entitled. The provision served only to define and limit the relief available to the buyer in the circumstance there described  when "for any reason not the fault of the seller hereunder, seller cannot convey title in accordance with the terms of this contract". In that contingency the buyer was to be restricted either to acceptance of the title tendered without abatement in the purchase price for defects or objections or to rescission of the contract with recovery of its down payment together with the net cost of title examination. The buyer thereby relinquished a substantial remedy frequently available to a buyer when something less than the title contracted for is all that the seller can convey  i.e., transfer of the defective title with a reduction in the price agreed on to compensate for the deficiency.
This provision, however, related only to procedural remedies and not to substantive rights. Thus, nothing therein operated to deprive this buyer of its right to go to court for a judicial resolution of the critical substantive issue  whether the seller could give good title  and in that action to seek specific performance by way of remedy should the court conclude that the seller could do so. If when the substantive rights of the parties had thus been determined, it *467 was then established that "for any reason not the fault of the seller hereunder, seller cannot convey title in accordance with the terms of this contract", the court would have been constrained by the agreement of the parties in fashioning the relief then to be granted. That contingency, however, never arose. At the time of trial the objection to title existing at the time of closing  the outstanding Simonetti-Moscatiello tenancy  had been cured in consequence of the execution, six months after the closing date but six months before the trial began,[4] by the tenants of a surrender of their rights in the premises. Thus, at the time it became critical the seller was able to convey title in accordance with the contract terms.
To suggest, as does the dissenter, that the provision limiting the buyer's remedies (to acceptance of defective title without abatement or to refund of down payment and reimbursement of title examination costs) in the event that good title could not be conveyed required a preclusive election of one or the other of those remedies by the buyer on the date of closing "or within a reasonable time thereafter" finds no support in the clause itself and would be wholly impracticable as this case itself reveals. This was not a case in which both parties acknowledged on the date of closing that the seller was unable to give good title  the prerequisite for invoking the restricted remedies clause. On the day of closing here the parties were in sharp disagreement as to whether the seller could convey good title. It was the seller's position then, as it continues to be on this appeal, that there was no defect in title in consequence of the former Simonetti-Moscatiello tenancy. The buyer then took the opposite view. The resolution of their differences, and thus the determination of the critical prerequisite, occurs only on the disposition of this appeal. In this instance, as in many others in which there are substantive differences between the parties, it was necessary to obtain a determination of those differences by resort to a judicial proceeding. To suggest, as did the trial court, that by instituting a judicial proceeding *468 seeking in one alternative conveyance of the defective title with abatement in the purchase price (a remedy seemingly foreclosed by provisions of this contract of sale), the buyer somehow deprived itself of its right to seek specific performance, is unsound. (This is not to say, of course, that a buyer could not by explicit provision agree to relinquish his right to the remedy of specific performance in all contingencies. No such explicit provision, however, is to be found in the present contract.)
The trial court made an error of law when it concluded that plaintiff by instituting the present suit had deprived itself of the right to specific performance. As a result of that error, we must reverse the order appealed from insofar as it affirmed the lower court's denial of that relief. Because specific performance is a discretionary remedy, in most cases such as this, in which the denial was predicated on an error of law, it might be appropriate on reversal to remit the matter to permit the Appellate Division to determine whether, in the exercise of its discretion under the correct rule of law, an award of such relief would be deemed appropriate (CPLR 5613). However, "while the form of relief may rest in the discretion of the court, in order that that discretion, when exercised, shall appear to be sound and not arbitrary, it must find its justification in the circumstances of the case. Broad as is the jurisdiction of a court of equity in such cases, it, nevertheless, is governed in the administration of relief by settled principles and the action of the court is dependent not upon its pleasure, but upon the facts of the case and the condition of the parties" (Rosenberg v Haggerty, 189 N.Y. 481, 484). On the record in the present case, in which plaintiff has done nothing other than pursue the remedies available to it in aid of requiring defendant to abide by his agreement and the defendant has been shown to be fully able to perform, the denial of specific performance would be an abuse of discretion. In this circumstance remittal to the Appellate Division would be a purposeless procedure.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to Supreme Court, Queens County, for entry of judgment directing *469 specific performance by defendant of the contract of sale dated March 27, 1978.
FUCHSBERG, J. (dissenting).
I am compelled to dissent in this case because, in my view, the effect of the majority's holding is, without good rhyme or reason, to vitiate a contract clause of a kind whose reflection of sound law, good policy, common sense and fair dealing have for long caused lawyers and those of their clients who are engaged in such transactions to adopt it as a standard termination provision of a contract to sell realty (see, e.g., New York Forms, Legal and Business, Form 1:152).
The purpose of the clause is to limit the rights and obligations of each party in the event the seller is unable to convey title in accordance with the contract (see Scerbo v Robinson, 63 AD2d 1096; Artstrong Homes v Vasa, 23 Misc 2d 608 [MEYER, J.]; Lanna v Greene, 175 Conn 453). To say the least, it serves to obviate disputes and to minimize the risks of litigation.
The language of the clause, as employed here, bears repeating: "If, for any reason not the fault of the seller hereunder, seller cannot convey title in accordance with the terms of this contract, the purchaser shall, at its own election, have the right to accept such title as the seller is able to convey, without any claim on the part of the purchaser for abatement of defects or objections, or the purchaser shall have the right to rescind this contract, upon which rescission, pursuant to this paragraph, purchaser will be entitled to the return of the amount paid at the time of signing of this contract, plus the net cost of title examination, if incurred, * * * and upon such repayment this contract shall be null and void".
Clearly foreseen is the contingency that the seller may be unable to deliver the contemplated title. In that event, in phrases which are not only unambiguous but also well understood in the world of real estate, it is stipulated that the purchaser shall at its election choose between two options. This language is mandatory and places the burden on the purchaser to decide at the closing (or within a reasonable time thereafter, assuming time is not of the essence) *470 in which of the two designated ways the transaction is then to be brought to an end: either by accepting such title as the seller can convey (but without any abatement in price for title deficiencies), or by rescinding the contract and obtaining a refund of the down payment and title costs. When either of these options is fulfilled, the affair is at an end (Friedman, Contracts and Conveyances of Real Property [3d ed], Conditional Contracts of Sale, § 1.5, p 113).
While, of course, had the seller refused to convey or refund, or deliberately created a defect in title, the buyer could seek recourse in law or equity, it is beyond cavil that this is not such a case. For, as the product of the judicial ministrations of Special Term and a unanimous Appellate Division, it is now conclusively established, by way of an affirmed finding of fact (NY Const, art VI, § 3, subd a; CPLR 5501, subd [b]; see Caprara v Chrysler Corp., 52 N.Y.2d 114, 118), that the seller at all times acted in good faith. Moreover, as the parties both agree, time was of the essence.
The difficulty arose when the seller, for reasons beyond his control, found himself unable to provide the title for which the agreement called. The nub of the defect was inability to comply with an undertaking to deliver the premises free of a tenancy in one of the residential apartments.[*] As Supreme Court Justice EDWIN KASSOFF, who presided over the trial in this case, was later to find, and as the Appellate Division again was to affirm, the buyer not only refused to accept title on the scheduled closing date, but, insisting on declaring a default, commenced the suit here within the *471 additional three-week period the seller requested for a final opportunity within which to effect a cure. More importantly, the buyer refused to choose either of the options to which it expressly had been limited in these circumstances. In the suit it instituted, and the lis pendens it filed, it ignored the exculpatory termination clause. Instead, the vendee sought conveyance of either clear title which, according to its own lights, the seller was not then in a position to deliver, or such lesser title as the seller did have power to convey, but with an unbargained abatement in the purchase price.
Needless to say, by requesting remedies which were contractually excluded, the purchaser was, in effect, asking the court to redraft the parties' contract of sale. It is elementary that equity enforces contracts; it neither reviews nor rewrites them (see Grace v Nappa, 46 N.Y.2d 560, 565).
Haffey v Lynch (143 N.Y. 241), the case on which the majority places such heavy reliance and which doubles as the basis for its Warren Weed's New York Real Property quotation, is not to the contrary. In Haffey, there simply was no agreement to limit the remedies of the purchaser. The court, therefore, merely held that specific performance could be ordered if, at trial, the seller had good title, even though it had been encumbered at the time of the closing. It nowhere suggests that, had the contract between the parties delineated conditions and terms akin to those contained in the termination clause in the present agreement, the result would not have been entirely different.
Nor is this a case of a buyer, who, having elected to take the property as is for the full purchase price, was confronted by a seller who refused to make the conveyance even on those terms. Surely, in such circumstances, suit would lie, and if, by the time of trial, the title were clear, it seems only right that, having agreed to take the title, flawed or unflawed, he would get the unimpaired one if that be its state when the day of reckoning arrived. For that situation would then be no different from one in which, having accepted the property originally, a purchaser became the beneficiary of the boon of an evaporation of the encumbrance at a later time.
But this is not what happened in the case before us now. *472 The buyer refused to make the election to which it was committed. By its unmerited suit  seeking a choice to which it had no right  ipso facto, it indefinitely delayed the termination for which the seller had contracted as a means of protection for himself.
The net result of the majority's ruling, as I see it, is to put one who defies obligations in a position where, to use the vernacular, with impunity it may follow a course of "heads I win, tails you lose". If, by the time it has finished carrying on its litigation, the rising condition of the real estate market and the course of inflation has appreciated the value of the property (as was the prevailing course of economics in the interval here), the buyer will have succeeded in extending its time to take title, good or bad. If, on the other hand, a downward trend of values has made the property less attractive, any title imperfection presumably would allow it to fully recoup the limited funds it had advanced. And, while the buyer is enjoying these unilateral choices, the seller, as a practical matter, his property clouded by the lis pendens, and though he would not have entered into the contract save for the termination clause, will have had to forego any opportunity that might have come along to sell his property, imperfect as the title might be.
The majority's claim, that there is no unjust advantage to the seller here because the "action was instituted within two weeks of the aborted closing", I respectfully suggest, misses the point. The delay which unwarrantedly favored the purchaser is that which occurred between the closing and the actual adjudication. Here it was over a year.
The overriding irony, all the more so in an equity context, rests in the fact that the purpose of the termination clause was to implicitly provide that the existence of an encumbrance of the title would not constitute a breach. In these circumstances, a title defect could not be the basis for a suit for specific performance to compel the conveyance of an unencumbered title. Rather, only if title were perfect and the seller refused to convey, would specific performance be a proper remedy. Nonetheless, after rejecting title expressly because of its insistence that it was defective, the vendee instituted a suit seeking unencumbered title.
*473 The majority's refrain that, as a "prerequisite for invoking the restricted remedies clause" on the day of closing, both parties must acknowledge that the seller was unable to give good title is, to say the least, puzzling. First of all, the clause says no such thing; its application is triggered by the objective fact that there is a defect in title and not whether one party or the other thinks so. Secondly, such an interpretation proceeds on the unfounded premise that the buyer, somehow, would have less options if, at closing, the seller disputed the defectiveness of the title. However, as the majority has had to concede, if the title was indisputably bad, the buyer's only choices were to take the property without abatement or demand its money back. But, even if it were disputed, the buyer would still have precisely the same options for, though the seller did not guarantee that the title would be good, the buyer could choose to take it whether it was encumbered or not.
Therefore, by refusing to take the property at the time of the closing, the buyer elected the refund and his rights became fixed accordingly. The only thing that could have altered this result would have been an ultimate judicial determination that, at the time the buyer made its choice, some act of bad faith on the part of the seller had relegated the buyer to a choice between a bad title and the deposit instead of a choice between a good title and the deposit. In that event, it is conceivable that a court of equity might have sought to right the wrong as of the time of trial when the bad faith was first established. But here, since the irrefragable finding is that of the seller's good faith, the choice made at the time of the closing must remain fixed.
To summarize, there are only three sets of circumstances in which plaintiff could succeed: (1) It requests its money back and sues for it if it is withheld. (2) It offers to pay the full purchase price for the title as is and sues for it if it is withheld. (3) It sues for specific performance of the unencumbered property, or, in the alternative, for specific performance of the encumbered property with an abatement to compensate for the encumbrance, but only if the seller had been guilty of bad faith. The plaintiff's suit fell within none of these categories.
*474 All these considerations in mind, it seems impossible to find that the courts below abused their discretion as a matter of law in denying specific performance and limiting the buyer's remedy to a refund of its down payment. Accordingly, I would affirm.
Order reversed, etc.
NOTES
[1] Four other objections also raised by the buyer are not relevant to our consideration of the appeal. Defendant's answer alleged compliance or readiness to comply with respect to each of these objections and none is now urged as impairing the title that defendant is able to convey.
[2] The buyer exercised its procedural right to demand alternative relief, namely, conveyance of title by the seller with abatement in the purchase price to be paid by the buyer (CPLR 3017, subd [a]).
[3] Following the reversal and remittal for a new trial by our court an interlocutory decree was granted awarding specific performance to the purchaser and sending to a referee the issue of the amount of the unpaid purchase price due to the seller. Eventually a final judgment was granted directing specific performance in favor of the buyer and fixing the amount to be paid to the seller (Haffey v Lynch, 193 N.Y. 67).
[4] This fact refutes the seller's further assertion that he should not now be required to tender the same title rejected by the buyer at the closing. In a very significant aspect the titles were not the same.
[*] While the contract of sale, which was entered into on March 27, 1978, set the date for closing of title as July 17, 1978, a handwritten rider provided that the purchaser would not be obliged to close until a landlord-tenant nonpayment dispossess proceeding the seller had brought against his tenant had been resolved in favor of the landlord and the tenancy at issue terminated. In fact, by September 29, 1978, when the seller had advised the buyer that the closing would take place, and again on October 20, 1978, to which the seller asked that it be rescheduled, an order of eviction had issued, the tenant had stipulated to vacate, removing his belongings from the premises and canceling his utilities. Furthermore, the buyer's own inspection had revealed that the apartment was vacant. Still pending, however, was an appeal by the seller from an order of a Judge in the landlord-tenant court staying the formal final order and warrant.