MARTIN SHEPARD et al., Appellants, v SPRING HOLLOW AT SAGAPONACK, Respondent.

Second Department, June 1, 1982

**APPEARANCES OF COUNSEL**

*Hoffberg, Rabin & Engler* (*Jack Rabin* of counsel), for appellants.

*Stanley Hyman* for respondent.

**OPINION OF THE COURT**

LAZER, J. P.

Writing for the majority in *S.E.S. Importers v Pappalardo* (53 NY2d 455, 458-459), Judge JONES opens his opinion with the following declaration: "Notwithstanding that at the time of closing the seller was unable to convey good title in consequence of a defect in his own title, the buyer is entitled to specific performance where the defect has disappeared at the time of trial and the court can then give an effective judgment for the equitable relief demanded. The buyer's right to specific performance in this circumstance is not lost because the parties expressly agreed in the contract of sale as to the remedies to which

the buyer would be entitled in the event the seller was unable to convey good title." Proffering *S.E.S.*, the instant plaintiffs argue that they too are entitled to specific performance based on the state of their seller's title at the time of trial and therefore the judgment under appeal should be reversed. Our analysis leads to a contrary conclusion.

During the course of subdivision of certain property in the Town of Southhampton, the defendant agreed to sell the plaintiffs specifically numbered lots on a proposed subdivision plat which had not as yet been approved by the planning board. The sales were expressly conditioned on the defendant "filing an approved subdivision map [entitled 'Map of Spring Hollow at Sagaponack'] in the Office of the Clerk of the County of Suffolk." Under the two contracts involved, the closing date was fixed at December 1, 1977, or two weeks from the date of final approval of the subdivision map, whichever was later.

The Board of Title Underwriters builders' form contracts utilized by the parties contained the following provisions relating to insurability of title and restriction of remedies:

"16. The seller shall give and the purchaser shall accept a title such as a Member of the New York Board of Title Underwriters, will approve and insure * * *

"22. In the event that the seller is unable to convey title in accordance with the terms of this contract, the sole liability of the seller will be to refund to the purchaser the amount paid on account of the purchase price and to pay the net cost of examining the title, which cost is not to exceed the charges fixed by the New York Board of Title Underwriters, and the net cost of any survey made in connection therewith incurred by the purchaser, and upon such refund and payment being made this contract shall be considered canceled."

After the map was approved by the planning board and filed in the Suffolk County Clerk's office, the defendant's attorney wrote the buyers scheduling the closing for August 4, 1978. The buyers replied by requesting a delay due to other financial commitments and suggested an adjournment. The closing was then adjourned until August 21, 1978, but on August 16, 1978 the buyers wrote the defen-

dant that they were unwilling to close as scheduled because of the following exception raised by their title company: "Company excepts any loss, claim or damage by reason of the pending lawsuit."

The "lawsuit" referred to was a CPLR article 78 proceeding brought by certain environmental groups seeking to annul the planning board approval of the Spring Hollow subdivision. Upon receipt of the title company report, one of defendant's partners spoke to the buyers in an unsuccessful effort to assure them that the legal challenge to the subdivision would be futile and then offered to return the down payments. To this, one of the buyers responded: "I don't want my money back. I want to buy the land when * * * all the legal challenges are over." On August 25, 1978, the date fixed by defendant for closing, the buyers commenced this action seeking specific performance of the contracts upon the termination of the pending subdivision litigation. In a letter to the plaintiffs dated August 28, 1978, defendant terminated the contracts due to plaintiffs' failure to attend the closing, enclosed a check refunding the down payments and offered to pay title and survey expenses upon documentation.

By the time the action was reached for trial in April, 1980, the legal challenge to the subdivision had been defeated, all avenues of appeal had been exhausted (see *Matter of Barton v Halsey*, 67 AD2d 726, mot for lv to app den 48 NY2d 601), and the basis for the title company exception had disappeared. At the trial, plaintiffs justified their claim of defective title by contending that (1) the contractual references to "final approval of subdivision map" meant planning board approval plus termination of any litigation challenging the approval, and (2) the title company exception rendered title deficient in any event. It was plaintiffs' belief that defendant had no right to cancel the contracts and was required to await the outcome of the subdivision suit.

Determining that final approval occurred when the approved plat was filed with the County Clerk, if not when the map was approved by the planning board, Trial Term dismissed the complaint. In the court's view, litigation was a contingency for which the parties could have contracted

by providing that closing would be deferred until resolution of any lawsuits. The conclusion reached was that the title exception warranted the purchasers' refusal to close, but the restricted remedies clause entitled the seller to rescind the contracts.

Subsequent to this ruling at Trial Term, the Court of Appeals rendered its determination in *S.E.S. Importers v Pappalardo* (53 NY2d 455, *supra*). Plaintiffs now rely on that decision to urge that the disappearance of the instant title defect by the time of trial mandates that we require the seller to deliver title. We cannot agree that *S.E.S.* is either as simple or sweeping as plaintiffs see it.

One of the conditions in the *S.E.S.* contract required the seller to terminate a particular apartment lease which was then the subject of a pending summary proceeding. The contract provided (53 NY2d, at p 459): " 'Purchaser will not be obligated to close title herein until: (a) the below action is determined in favor of the landlord and no appeals will be pending, (b) the tenancy below is terminated, (c) the lease referred to below is terminated and cancelled.' " In the event of defective title, the contract limited the buyer to receipt of the down payment and title costs unless the purchaser was willing to accept the existing title without abatement of price.

At the time set for the *S.E.S.* closing, the lease remained unterminated but the seller nevertheless insisted that its title conformed to the contract and tendered conveyance. The buyer rejected the tender and brought an action seeking delivery of good title or of such lesser title as was possible with an abatement of the purchase price. The seller's answer asserted good title and counterclaimed for damages based on the buyer's breach. By the time *S.E.S.* (*supra*) came to trial, however, the disputed lease had been surrendered and title was clear. The trial court found in seller's favor and limited the buyer to the restricted remedy of refund of down payment and reimbursement of title expenses. The Appellate Division affirmed with a technical modification (see *S.E.S. Importers v Pappalardo,* 79 AD2d 653).

In reversing and directing specific performance, the Court of Appeals placed its primary focus upon the circum-

stances at the time of closing — specifically whether a dispute as to title existed. Absent such a dispute — if both parties acknowledged the deficiency of title — the purchaser's remedies would have been restricted to refund of down payment and title expenses (53 NY2d, at p 467). Since the seller insisted, however, that its title complied with the contract, the rejecting buyer was entitled to judicial resolution of the issue and the seller's resort to the restricted remedies clause became dependent upon the posture of title at the time of trial (*supra,* pp 466-467). Title having been cured by them, the seller was able to convey in accordance with the contract and settled equitable principles required the fashioning of appropriate relief as of the time of trial (*S.E.S. Importers v Pappalardo,* 53 NY2d 455, 464-465, *supra,* citing *Haffey v Lynch,* 143 NY 241 and 5 Warren's Weed, New York Real Property [4th ed], § 9.05). The relief, of course, was specific performance.

Since *S.E.S.* dealt with a seller who refused to concede the defect in its title or to invoke restricted remedies safeguards, it was only logical to evaluate the right to rely on such safeguards on the basis of the posture of title at the time of trial. We do not regard *S.E.S.* as providing *carte blanche* to buyers to evade limited remedies provisions by the use of delaying tactics based upon unwarranted construction of contract provisions, the tie-up of property, and the institution of meritless litigation intended to ensure sufficient passage of time for evaporation of title deficiencies.

As we view *S.E.S.* (*supra*), we must first decide whether the vendor's title conformed to the contracts at the time of tender. On this issue, plaintiffs support their challenge to title by relying on the title company exception concerning insurability and their interpretation of the term "final approval" which they regard as encompassing the favorable conclusion of all subdivision litigation.

Since there can be no disagreement that the insurability provision of the contracts rendered defendant's title deficient at the time set for closing (see *Laba v Carey,* 29 NY2d 302; *Kopp v Barnes,* 10 AD2d 532), it is obvious that no "dispute" over title existed which required judicial resolution within the meaning of *S.E.S.* Responding to plaintiffs'

failure to appear at the closing, defendant promptly sent a check for the down payments and declared its willingness to refund title examination and survey costs. The answer in the action admitted that title did not accord with the contracts.

Contrary to plaintiffs' assertions that it involves the quality of title, the argument over the meaning of "final approval" has significance only with reference to the closing date. We find that "final approval" occurred when the planning board adopted its resolution of approval. Section 276 (subd 2, par [e]) of the Town Law defines final plat approval as "the signing of a final plat by a duly authorized officer of a planning board after a resolution granting final approval of the plat". We see no reason to embellish that definition by requirements concerning the termination of litigation, for we may not rewrite a contract under the guise of construction (see *Grace v Nappa*, 46 NY2d 560, 565). The interpretation of "final approval" as it relates to a closing date should be consistent with other portions of the contracts which condition the sales on the filing of the subdivision map and not upon the outcome of litigation concerning which the parties chose not to contract (cf. *Williams Press v State of New York,* 37 NY2d 434, 440; *Tougher Heating & Plumbing Co. v State of New York,* 73 AD2d 732).

Plaintiffs' palpable misconstruction of the closing date provision — with the obvious intent to prevent closing — gives no support to their claim that equitable relief should have been fashioned as of the time of trial. In the absence of controversy concerning the seller's inability to convey in accordance with the contracts, and considering the seller's clear right to set a closing date and make a tender once the map had been approved, plaintiffs were not entitled to defer consideration of defendant's right to employ the restricted remedies clause until the matter was reached on the Trial Calendar. Since defendant's inability to deliver was not self-created, its right to limit its liability should not be further inhibited. In this respect, there is no merit to plaintiffs' argument that the defendant's invocation of the restricted remedies clause constituted bad faith. While there is an implied covenant of fair dealing and good faith

in all contracts (*Van Valkenburgh, Nooger & Neville. v Hayden Pub. Co.,* 30 NY2d 34, cert den 409 US 875), the defendant did not create the inability to convey a conforming title (see *Norgate Homes v Central State Bank,* 82 AD2d 849; cf. *Mokar Props. Corp. v Hall,* 6 AD2d 536; *Horowitz v Haber,* 37 Misc 2d 1036). The subdivision approval was diligently defended and termination of the litigation was beyond its control. Thus, the purchasers' exclusive remedy was the return of their money and reimbursement for survey and title examination costs (see *Scerbo v Robinson,* 63 AD2d 1096; *Artstrong Homes v Vasa,* 23 Misc 2d 608).

Accordingly, the judgment appealed from should be affirmed.

MANGANO, GIBBONS and GULOTTA, JJ., concur.

Judgment of the Supreme Court, Suffolk County, entered July 15, 1980, affirmed, with costs.