■ JUDNICK REALTY CORPORATION, Respondent, v 32 WEST 32ND STREET CORP., Appellant. — Order, Supreme Court, New York County (Cahn, J.), entered on November 16, 1982, affirmed on the opinion of Cahn, J., at Special Term. Respondent shall recover of appellant $75 costs and disbursements of this appeal. Concur — Murphy, P. J., Kupferman, Sullivan and Asch, JJ.

Silverman, J., dissents in a memorandum as follows: I would deny the motion for summary judgment. Paragraph 22 of the form contract of sale provided: "22. In the event that the seller is unable to convey title in accordance with the terms of this contract, the sole liability of the seller will be to refund to the purchaser the amount paid on account of the purchase price and to pay the net cost of examining the title, which cost is not to exceed the charges fixed by the New York Board of Title Underwriters, and the net cost of any survey made in connection therewith incurred by the purchaser, and upon such refund and payment being made this contract shall be considered canceled." Under such a provision, in the absence of some other overriding

provision of the contract, the rights of the parties are fixed as of the date set for closing, at least where both parties are in agreement that at that time there was a defect in the seller's title and the defect was not self-created by the seller; and if, at the time of closing, the purchaser is unwilling to take the property, with the title defects, and pay the full purchase price, the purchaser's sole remedy is the return of the down payment plus the specified expenses. (*Shepard v Spring Hollow at Sagaponack*, 87 AD2d 126, distinguishing *S.E.S. Importers v Pappalardo*, 53 NY2d 455.) In the present case the latest date for closing was apparently September 6, 1979. On that date there was no dispute that the defect of title — the continued occupancy by the second-floor tenant — still existed. There is some correspondence, February-April, 1980, after the defect no longer existed, tentatively discussing a later closing date; but at most this presents a question of fact as to when the last agreed-upon closing date was. There are provisions in this contract which may be deemed to override paragraph 22. These are paragraphs 1 and 12 of the rider which provide: "1. This contract is contingent upon the seller making available the second floor loft vacant and free of tenancies or occupancy by any person or party on or before May 15, 1979 and in the event the seller fails to do so, then at the sole option and discretion of the purchasers, this contract can be declared null and void and of no effect by them, the deposit of Ten Thousand ($10,000.00) given by them returned to them and further they shall be relieved from any and all liability under the terms of this contract * * * 12: Purchaser shall have the right to extend the date set forth in paragraph '1'* to this rider at its sole option and discretion without declaring this contract null and void." Again there are questions of fact as to the exercise of this option. To begin with, it appears doubtful whether the buyer ever extended the date past September 6, 1979. On August 7, 1979, the purchaser notified the seller that if title did not close within 30 days, the purchaser would hold the seller in default and would hold the seller liable for specific performance, abatement of the purchase price and damages. The 30 days expired on September 6, 1979; title did not close on that date, and on that date plaintiff purchaser commenced this action for damages, specific performance and abatement of purchase price alleging that defendant seller had failed and refused to convey a good and marketable title, etc. On its face, this would indicate that the purchaser never exercised the option to extend the date for closing or for acquiring title beyond September 6, 1979. The correspondence of February-April, 1980, to which I have referred, may again raise a question of fact on this point. Further, there would seem to be some question as to whether purchaser's option to extend the date was of indefinite duration, or whether in the absence of some specified termination date and in the absence of any dispute about the existence of a defect in the title, the option would continue only for a reasonable time, and the question of what constitutes a reasonable time is again a question of fact.

---

* In at least one version of paragraph 12 the phrase "the date set forth in paragraph '1' " is stricken and the phrase "the closing date" is written in. The briefs of both parties have argued the case on the assumption that the correct phrase is "the date set forth in paragraph '1'."