[801 NYS2d 31]

# 101123 LLC, Appellant, v Solis Realty LLC, Respondent.

First Department, September 20, 2005

APPEARANCES OF COUNSEL

*Westerman Ball Ederer Miller & Sharfstein, LLP*, Mineola (*Jeffrey A. Miller* and *Richard Gabriele* of counsel), for appellant.

*Tannenbaum Helpern Syracuse & Hirschtritt LLP*, New York City (*L. Donald Prutzman* and *David J. Kanfer* of counsel), for respondent.

## OPINION OF THE COURT

SAXE, J.P.

When a contract for the sale of real property contains a clause specifically setting forth the remedies available to the buyer if the seller is unable to satisfy a stated condition, fundamental rules of contract construction and enforcement require that we limit the buyer to the remedies for which it provided in the sale contract. We find these fundamental rules to be dispositive here, and hold the case of *S.E.S. Importers v Pappalardo* (53 NY2d 455 [1981]), in which specific performance was awarded notwithstanding a restricted remedies provision, to be inapplicable.

The parties entered into a contract of sale dated May 18, 2001, by which defendant Solis Realty LLC agreed to sell its five-story, six-apartment building at 101 Morningside Avenue to plaintiff 101123 LLC. The contract provided that the seller must convey the building "free and clear of leases, tenancies or occupancies," and added, in paragraph 7 (b):

> "If Seller is . . . unable to convey title in accordance with the terms of this Contract, then Purchaser may elect either (I) to terminate this Contract, or (ii) to accept such title as Seller may convey and shall complete the transaction as otherwise contemplated by this Contract, but in no event shall Purchaser be entitled to any abatement of the Purchase Price or to any lost profits or other damages, deduction, offset or credit."

The contract further provided, in paragraph 18:

> "In the event that Seller . . . defaults under the terms of this Contract, the sole liability of Seller will be to instruct the Escrow Agent to return to Purchaser the Contract Deposit, together with any interest earned thereon, and pay the net title exam-

ination costs, without policy, and upon such return being made this Contract shall automatically terminate and be deemed cancelled, and neither party shall thereafter have any further liability or obligation to the other hereunder; provided, however, that if Seller *wilfully* defaults under this Contract and fails to close on the sale of the Premises in accordance with the terms of this Contract, Purchaser shall have the right to bring an action for specific performance against Seller and exercise any other remedies at law or in equity." (Emphasis added.)

The contract specified a closing date of July 18, 2001.

At the time the contract was executed, the only tenant residing in the building was an elderly rent-stabilized tenant named James McLean, who was believed to be suffering from Alzheimer's disease and other possible medical and psychological difficulties.

Despite repeated adjournments of the closing date in order to allow the seller time to arrange for McLean to relocate, by April 2, 2002, McLean still remained in his apartment. On that date, the buyer's attorney wrote a letter to the seller's attorney emphasizing that the closing had initially been scheduled to occur on July 18, 2001, adding:

> "At closing, the Seller is obligated to deliver the premises free and clear of leases, tenancies or occupancies . . . We have been informed that a tenant remains at the premises as of the date of this writing. Our client has been extremely patient, however, if title cannot close within twenty (20) days, our client will have no other recourse but to declare the Seller in default."

In response, also on April 2, 2002, the seller's attorney faxed a letter to the buyer's attorney advising, "[d]espite Seller's efforts to cause the Property to be free of tenancies or occupancies, Seller is unable to deliver the Property free and clear of tenants or occupants." The seller's attorney referred to the buyer's options under paragraph 7 (b) of the contract, and interpreted the buyer's assertion that "our client will have no other recourse but to declare the Seller in default" as an election to terminate the contract:

> "We have received your letter . . . and understand the same as an election by [Buyer] to terminate the

Contract. Accordingly, we are prepared to instruct the escrow agent to release the contract deposit to [Buyer] provided that mutual releases with respect to the Contract are exchanged by Seller and [Buyer]."

However, in a letter dated April 4, 2002, the buyer's attorney rejected the seller's characterization of its (the buyer's) position, and explained that it was not electing to cancel the contract. The buyer also disputed the seller's asserted inability to convey clear title, noting that the seller had shown it no evidence that it had even asked McLean to leave. The buyer's attorney took the position that the seller's failure to remove McLean constituted a breach of its obligation under the contract. This action for specific performance was then commenced. As it happened, after issue was joined, the premises were vacated.

Finding a question of fact as to whether the seller had made adequate good faith efforts to arrange for the tenant's relocation, the IAS court denied both parties' motions for summary judgment, and a nonjury trial was held. After trial the IAS court found that the seller had made reasonable efforts to induce the tenant to relocate, and dismissed the complaint.

On appeal, the question presented is whether the buyer is limited to the remedies provided for in the parties' contract, entitling it only to either take the property as it was or to rescind the contract, and precluding specific performance except in the event the seller willfully defaulted on its contractual obligations. The buyer relies on the *S.E.S.* case (53 NY2d 455 [1981], *supra*) to argue that it is entitled to specific performance of the contract here despite the lack of a willful default on the seller's part.

While there are similarities between this case and *S.E.S.*, we conclude that its holding is not controlling here.

In *S.E.S.*, a contract for the sale of real property included a provision similar to paragraph 7 (b) in the parties' contract here, regarding the buyer's remedies in the event of the seller's inability to convey clear title. The contract there contemplated that the seller would successfully complete the eviction of the tenants of an apartment in the building before closing. It provided that "[i]f, for any reason not the fault of the seller hereunder, seller cannot convey title in accordance with the terms of this contract," the buyer could either take the property with the defect or rescind the contract and receive its

money back (*id.* at 460). On the date set by the seller for the closing, the seller was unable to satisfy the contract term requiring that the action against the tenants be "determined in favor of the landlord [with] no appeals . . . pending" (*id.* at 459), since it could furnish neither a final judgment in the Housing Court matter against the tenants nor a written surrender of the lease by the tenants. Rather than either accepting title as it was, or rescinding the contract, the buyer sued for specific performance. Months after the specific performance action was commenced, but prior to trial, the tenants surrendered the lease (*id.* at 461).

The trial court in *S.E.S.* had found that the seller's inability to convey clear title at closing was not the result of bad faith, and that therefore the buyer, having declined to take title with the defect, was entitled only to the rescission of the contract and return of its down payment and costs. However, the Court of Appeals determined that despite the lack of bad faith on the seller's part, the buyer was entitled to specific performance (*id.* at 462), since by the time of trial the seller was able to convey good title (*id.* at 464, 465).

The *S.E.S.* court conceded that the "restricted remedies clause" of the parties' contract *could* properly be invoked to limit the buyer's remedies, *if* it were undisputed that on the closing date, the seller was actually unable to convey good title (*id.* at 467). However, it held that the parties disagreed as to whether the seller *could* give good title, since the seller took the position that it could convey good title, while the buyer protested that it could not; therefore, the buyer had the right to sue for specific performance:

> "nothing [in the contract] operated to deprive this buyer of its right to go to court for a judicial resolution of the critical substantive issue—whether the seller could give good title—and in that action to seek specific performance by way of remedy should the court conclude that the seller could do so" (*id.* at 466).

It is important to recognize that in *S.E.S.*, at the time the action was commenced, the seller had refused to concede that there was a defect in its title, and had not invoked the restricted remedies clause, but rather had demanded that the buyer close on the contract. This placed the buyer in a position with no options except to litigate. Here, in contrast, the seller conceded from the outset its inability to convey clear title, and invoked

from the outset the restricted remedies clause of the contract, leaving the buyer with all the options contemplated in the contract for an inability to convey clear title, as intended.

Furthermore, in *S.E.S.*, the seller had the right to legally evict the remaining tenants, had contractually undertaken to do so, and had commenced such a proceeding but apparently thereafter neglected or abandoned it. So, the buyer in *S.E.S.* had a legally viable right to demand that the seller deliver clear title to the building, which amounts to a right to seek specific performance at that time. Here, in contrast, the seller had no viable legal basis upon which to successfully oust the remaining elderly, rent-stabilized tenant, and could only rely upon offering the tenant inducements to persuade him to voluntarily relocate. So, unlike the buyer in *S.E.S.*, the buyer in the present action had no colorable claim to specific performance at the time the action was commenced. Indeed, the buyer's claimed entitlement to specific performance as of the scheduled closing date, founded merely upon the surmise that the seller had not offered the tenant appropriate inducements to tempt him to relocate, was essentially baseless.

Under such circumstances, relying on the decision in *S.E.S.* to grant the buyer specific performance in this instance would be tantamount to

> "providing *carte blanche* to buyers to evade limited remedies provisions by the use of delaying tactics based upon unwarranted construction of contract provisions, the tie-up of property, and the institution of meritless litigation intended to ensure sufficient passage of time for evaporation of title deficiencies" (*Shepard v Spring Hollow at Sagaponack*, 87 AD2d 126, 130 [1982]).

Once it is established that the holding of *S.E.S.* is not controlling, the standard rules of contract construction and enforcement require that we limit the buyer to the remedies that were specifically delineated in the sale contract.

The Court of Appeals recently emphasized that when courts interpret contracts, we must apply the " 'familiar and eminently sensible proposition of law [ ] that, when parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms' " (*Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004], quoting *W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990], and citing *Reiss v Financial Performance Corp.*, 97 NY2d 195, 198

[2001]). Indeed, the Court in *Vermont Teddy Bear* remarked on the particular applicability of this basic rule " 'in the context of real property transactions, where commercial certainty is a paramount concern, and where . . . the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length' " (*id.*, quoting *Matter of Wallace v 600 Partners Co.*, 86 NY2d 543, 548 [1995]). In view of this fundamental rule, " 'courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing' " (*id.*, quoting *Reiss*, 97 NY2d at 199).

Where the parties to a real property sale contract have made specific provision for the buyer's options in the event the seller is unable to satisfy a condition of the contract, and have even agreed upon the circumstances under which the buyer may claim a right to specific performance of the contract, the foregoing important principles require the court to enforce the contract as written, including the applicable remedies, and the court may not look beyond the agreed-upon remedies to award the buyer specific performance in circumstances other than those in which the parties agreed that it would be available.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Marylin G. Diamond, J.), entered December 13, 2004, which, after a nonjury trial, dismissed the complaint, should be affirmed, without costs.

Sullivan, Nardelli and Williams, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered December 13, 2004, affirmed, without costs.