OPINION OF THE COURT
O. Peter Sherwood, J.
In motion sequence 002, plaintiff Highbridge House Ogden LLC seeks partial summary judgment dismissing defendant’s first counterclaim for specific performance of a contract for the sale of real property, and cancellation of a notice of pendency on the subject property. Defendant Highbridge Entities LLC opposes the motion, and cross-moves for summary judgment on its second counterclaim for return of its deposit should the court dismiss the first counterclaim.
*978 I. Background[1]
This action arises out of an aborted sale of real property located at 1131-1137 Ogden Avenue, Bronx NY (the building), after the defendant buyer discovered that the plaintiff seller did not hold title to the first three floors of the building. The genesis of this action can be traced to 1996, when Leslie Westreich, a principal of the defendant, purchased all of the shares of Highbridge House Inc. (the predecessor owner). The predecessor owner in turn owned the “Air Rights Fee” title to the portion of the building lying above a certain “horizontal plane.” The predecessor owner acquired the air rights fee in 1968 by deed from the New York City Educational Construction Fund (the 1968 deed). On July 26, 2006, the predecessor owner sold the air rights fee to plaintiff by deed (the 2006 deed). Both the 1968 deed and the 2006 deed contained the following legal description of the property:
“all the real property (hereinafter called the ‘Air Rights Fee’) in the Borough and County of Bronx, City and State of New York, which lies above (but not below) a horizontal plane . . . the elevation of which is one hundred twenty-three (123) feet and no inches as measured vertically above the datum level known as the Topographical Bureau of the Borough of Bronx Datum, which datum level is . . . two and six hundred and eight thousandths (2.608) feet above [the] mean sea level at Sandy Hook . . . .” (NY St Cts Electronic Filing [NYSCEF] Doc. No. 38, Westreich aff, exhibit 1, at 1, https:// iapps. courts. state .ny.us/nyscef/CaseSearch [complete CAPTCHA, search by case index No. 650793/ 2014, click on index No. hyperlink] [emphasis added].)
At the time of the sale, both the predecessor owner (including Westreich) and plaintiff believed that the air rights fee title included all 26 floors and 400 apartments of the building. Indeed, both the predecessor owner and plaintiff collected rents for all 400 apartments in the building (NYSCEF Doc. No. 21, plaintiff’s rule 19-a statement, ¶ 5).
*979 A. The Agreement, Title Defect and Aborted Closing
By virtue of a sale-purchase agreement dated December 28, 2012, plaintiff agreed to sell and convey the air rights fee title to defendant (the agreement).[2] At the time the contract was executed, defendant’s only disclosed principal and signatory to the agreement was Joel Gluck. In fact, Westreich was a principal in defendant. Pursuant to the agreement, the parties agreed to a purchase price of $35,200,000 (the purchase price), payable by way of a $1,500,000 deposit by defendant to the designated escrow agent (the deposit), with the balance of $33,700,000 to be paid at closing. The agreement set a closing date of February 20, 2013, but permitted defendant to adjourn the closing to March 22, 2013, “TIME BEING OF THE ESSENCE with respect to [defendant’s] obligation to close on such date” (NYSCEF Doc. No. 14, amended complaint, exhibit 3 [agreement], ¶ 5). Defendant exercised its right to adjourn the closing.
Although defendant had on two prior occasions received certification of good and marketable title from its title insurer, on March 20, 2013, two days prior to the adjourned closing date, defendant obtained an updated surveyor’s certificate that revealed a purported title defect (the surveyor’s certificate) (NYS-CEF Doc. No. 42, defendant’s rule 19-a statement, ¶ 13). Specifically, the surveyor’s certificate stated that plaintiff’s ownership interest “starts at or near the underside of the support structure for the fourth floor” (see NYSCEF Doc. No. 40, Westreich aff, exhibit 5 [surveyor’s certification]). Accordingly, plaintiff did not hold title to the first three floors of the building.
At 9:34 p.m. on March 20, 2013 defendant notified plaintiff’s counsel in a letter sent by email of the title defect. Defendant advised plaintiff that in light of the fact that plaintiff’s title did “not include the 1st 3 floors of the building,” defendant “would be agreeable to an adjournment of the closing” or “[alternatively, ... we will be prepared to close if you are able to tender good and marketable title to the entire building” (see NYSCEF Doc. No. 14, amended complaint, exhibit 7). *980 Plaintiff contends, and defendant disputes, that the March 20th letter was not properly or timely delivered in hard copy via FedEx until the morning of the closing (Mar. 22, 2013), and was therefore defective under the terms of the agreement. By letter dated March 21, 2013, plaintiff confirmed that it was “ready, willing and able to convey all of Seller’s right, title and interest in” the premises the next day at the closing, and that it expected to do so notwithstanding the purported title defect (see NYSCEF Doc. No. 14, amended complaint, exhibit 8).
On March 22, 2013, counsel for plaintiff and defendant appeared before a court reporter for the scheduled closing. At the closing, plaintiff tendered a deed to the building (see NYSCEF Doc. No. 14, amended complaint, exhibit 9 [closing tr] at 4, line 7 through 5, line 5). Defendant rejected the tender “as the seller has a material title defect issue that has to be resolved before we can close this transaction” (id. at 5, lines 9-13). Defendant accordingly asked the seller to “extend the closing date by three or four weeks, and enter into negotiations immediately with us to see how we can resolve this problem” (id. at 7, lines 17-22). Plaintiff declined to extend the closing date.
B. Purported Termination of the Agreement and Continued Negotiations
On March 25, 2013, plaintiff sent defendant a notice of termination of the agreement and advised that it would retain the deposit “as liquidated damages” (see NYSCEF Doc. No. 14, amended complaint, exhibit 10). By separate letter of same date, plaintiff demanded disbursement of the deposit from the escrow agent (see NYSCEF Doc. No. 14, amended complaint, exhibit 12). Defendant countered with its own letter to the escrow agent objecting to the demand, and demanding that the escrow agent continue to hold the deposit (see NYSCEF Doc. No. 14, amended complaint, exhibit 13).
This letter practice notwithstanding, the parties continued to negotiate. To that end, on January 30, 2014, plaintiff offered to close or return defendant’s deposit. Defendant refused, instead requesting updated financial information and the status of the title (NYSCEF Doc. No. 21, plaintiff’s rule 19-a statement, ¶¶ 55-56). At the same time, plaintiff also engaged counsel to negotiate with the City of New York in order to obtain title to the bottom three floors of the building. The parties dispute whether email communications and continued negotiations among the parties evidences defendant’s view that the transaction remained “open” (NYSCEF Doc. Nos. 42 f ¶ 22, *981 33; 49 ¶¶ 22, 33). Plaintiff contends that it engaged counsel to negotiate with the City and made improvements to the building in reliance on its understanding that the transaction had been terminated. Defendants contend that throughout the negotiations, plaintiff continuously represented that it desired to close the transaction with defendant, but that plaintiffs “sudden change in position . . . was precipitated by a change in control of the Seller entity that resulted when the partner of Seller controlled by Laurence Gluck bought out the other partners in or about December 31, 2012” (see NYSCEF Doc. No. 42, defendant’s rule 19-a statement at 19, ¶ 34).
C. Relevant Provisions of the Agreement
Three provisions of the agreement form the basis for the dispute in this action: sections 11, 12 and 20.
1. Section 11 of the Agreement — Title Defects
Section 11 of the agreement, entitled “Title Insurance,” provides a multi-step mechanism for resolving “exceptions to title.” First, defendant must notify plaintiff of any defects in title within five business days after defendant learns of the defect, but in no event later than the last business day prior to the closing date:
“If exceptions to title (including, without limitation, survey exceptions) appear on any Title Report or any update, new title report issued by Title Insurer or continuation of the Title Report (each a “Continuation”) which are not Permitted Exceptions, Purchaser shall notify Seller thereof within the earlier of five (5) business days after Purchaser receives such Title Report or Continuation, as the case may be, and the last business day prior to the Closing Date, time being of the essence . . . .” (NYSCEF Doc. No. 14, amended complaint, exhibit 3 [agreement], § 11 [a] [emphasis omitted].)[3]
Second, once the defendant notifies plaintiff of a defect in title, the plaintiff is thereafter obligated to determine whether to attempt to eliminate it:
“[I]f Seller is unable, or elects not to attempt, to eliminate such exceptions to title . . . and accordingly, is unable to convey title to the Premises in accordance with the provisions of this Agreement, Seller shall so notify Purchaser and, within five (5) *982 business days after receipt of such notice from Seller.” (Id.)
Third, upon notification of plaintiff’s intention not to eliminate an exception to title, defendant had five business days to elect either to terminate the agreement and receive its deposit back, or to accept title to the building subject to the title defect, without receiving an abatement of the purchase price (the title defect election period):
“[W]ithin five (5) business days after receipt of such notice from Seller, Purchaser shall elect either (i) to terminate this Agreement by notice given to Seller (time being of the essence with respect to Purchaser’s notice), in which event the provisions of Section 12 of this Agreement shall apply, or (ii) to accept title to the [building] subject to such exceptions, without any abatement of the Purchase Price.” (Id. [emphasis omitted].)
If the defendant failed to make an election within the prescribed period, the agreement provides that the defendant automatically be deemed to have accepted title to the building subject to the defect in title:
“If Purchaser shall not notify Seller of such election within such five (5) business day period, time being of the essence, Purchaser shall be deemed to have elected clause (ii) above with the same force and effect as if Purchaser had elected clause (ii) within such five (5) business day period.” (Id.)
2. Section 12 of the Agreement — Return of the Deposit
In the event that plaintiff could not deliver title in accordance with the agreement or that defendant elected to terminate the agreement under section 11 (a), section 12 of the agreement governs the return of the deposit to defendant. It provides in full:
“Return of Deposit. If Seller is unable to convey title in accordance with the express terms of this Agreement or if, in accordance with the terms of this Agreement, Purchaser is entitled to and elects to terminate this Agreement, subject to Section 20 of this Agreement, then this Agreement shall terminate and neither party to this Agreement shall have any further rights or obligations hereunder, except that Escrow Agent shall refund to Purchaser the Deposit and except for the rights and obligations hereunder that expressly survive the *983 termination of this Agreement.” (NYSCEF Doc. No. 14, amended complaint, exhibit 3 [agreement], § 12 [emphasis omitted].)
3. Section 20 of the Agreement — Specific Performance
Lastly, section 20 of the agreement governs the “Seller’s Inability to Perform; Seller’s Default.” Other than perhaps section 11 (a), section 20 is the only other provision of the agreement contemplating specific performance.[4] Section 20 provides, in relevant part, that
“If Seller shall be unable to perform its obligation to convey the Premises to Purchaser in accordance with the terms of this Agreement by reason of Seller’s Willful Default, then Purchaser, at its sole options and as its sole and exclusive remedies may either (a) terminate this Agreement, in which event Escrow Agent shall refund to Purchaser the Deposit, and neither party shall thereafter have any further right or obligation hereunder, other than the Surviving Obligations or (b) within forty-five (45) days after any rights of Purchaser arise due to a Seller’s Willful Default, bring an action in equity against Seller for specific performance.” {Id. § 20.)
“Seller’s Willful Default” is defined as:
“Seller’s willful refusal to perform its obligation to convey the Premises to Purchaser on the Closing Date in accordance with terms of this Agreement, provided: (1) the reasons for such refusal do not include conditions beyond Seller’s control; and (2) Purchaser has satisfied all conditions required to be satisfied by it under this Agreement, Purchaser is not otherwise in default under this Agreement and is ready, willing and able to perform all of its obligations under this Agreement and to deliver the Purchase Price due Seller under this Agreement.” (Id.)
Accordingly, in order for defendant purchaser to obtain specific performance of the agreement under section 20, (1) plaintiff seller must have “willful [ly] refus[ed] to perform its obligation to convey the [building] to Purchaser on the Closing Date in accordance with [the] terms of this Agreement”; and (2) *984 purchaser must have brought an action seeking specific performance within 45 days after the seller’s willful default (id.).
D. Procedural History
On March 12, 2014, plaintiff brought this action seeking a declaration of its right to retain the deposit being held in escrow. Defendants answered, and filed counterclaims. Its first counterclaim seeks an order directing plaintiff to “specifically perform and fulfill its obligations under the Agreement, including but not limited to selling the [building] to [defendant] pursuant to the Agreement” (NYSCEF Doc. No. 15, answer with counterclaims, ¶ 164). In its second counterclaim, defendant seeks, as alternative relief, a return of the deposit (see id. ¶ 172). In the instant motion, plaintiff seeks partial summary judgment dismissing defendant’s first counterclaim for specific performance. Defendant opposes, and cross-moves for summary judgment on its second counterclaim for return of the deposit in the event that the court dismisses the first counterclaim.
II. Discussion
A, Standard
The standards for summary judgment are well settled. Summary judgment is a drastic remedy which will be granted only when the party seeking summary judgment has established that there are no triable issues of fact (see CPLR 3212 [b]; Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957]). To prevail, the party seeking summary judgment must make a prima facie showing of entitlement to judgment as a matter of law tendering evidentiary proof in admissible form, which may include deposition transcripts and other proof annexed to an attorney’s affirmation (see Alvarez, 68 NY2d 320; Olan v Farrell Lines, 64 NY2d 1092 [1985]; Zuckerman v City of New York, 49 NY2d 557 [1980]). Absent a sufficient showing, the court should deny the motion without regard to the strength of the opposing papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985]).
Once the initial showing has been made, the burden shifts to the party opposing the motion for summary judgment to rebut the prima facie showing by producing evidentiary proof in admissible form sufficient to require a trial of material issues of fact (see Kaufman v Silver, 90 NY2d 204, 208 [1997]). Although the court must carefully scrutinize the motion papers *985 in a light most favorable to the party opposing the motion and must give that party the benefit of every favorable inference (see Negri v Stop & Shop, 65 NY2d 625 [1985]) and summary judgment should be denied where there is any doubt as to the existence of a triable issue of fact (see Rotuba Extruders v Ceppos, 46 NY2d 223, 231 [1978]), bald, conclusory assertions or speculation and “[a] shadowy semblance of an issue” are insufficient to defeat a summary judgment motion (S.J. Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338, 341 [1974]; see Zuckerman, 49 NY2d 557; Ehrlich v American Moninger Greenhouse Mfg. Corp., 26 NY2d 255, 259 [1970]).
B. Arguments
1. Plaintiffs Arguments
Plaintiff contends that defendant’s first counterclaim must be dismissed for three reasons: (1) the agreement bars the remedy of specific performance; (2) defendant has failed to satisfy all of the elements required for specific performance; and (3) equitable doctrines of estoppel, waiver, and laches bar the specific performance defendant seeks. Plaintiff also contends that the notice of pendency against the building should be canceled, and that costs and fees should be awarded to plaintiff.
a. Contractual Limitations of Remedies
Plaintiffs first contention hinges on sections 20 and 11 (a) of the agreement. In plaintiff’s view, section 20 is the only provision of the agreement that contemplates specific performance. Under that section, defendant is entitled to specific performance only in the event that plaintiff “willful [ly] refus[ed] to perform its obligation to convey the [building] to [defendant] on the Closing Date in accordance with [the] terms of this Agreement” (NYSCEF Doc. No. 14, amended complaint, exhibit 3 [agreement], § 20). Plaintiff maintains that since defendant does not allege any “willful refusal,” section 20 is not applicable and defendant is therefore not entitled to specific performance. Plaintiff adds that, even if section 20 was applicable, the claim is time-barred because defendant did not bring an action in equity seeking specific performance within 45 days of the aborted closing, which limitation period is imposed by section 20 of the agreement. Plaintiff contends that because defendant is not entitled to specific performance under section 20 of the agreement, defendant’s remedies were limited to those provided by section 11 (a) of the agreement; namely either to terminate the agreement and receive a return of the deposit, or *986 to accept title “as is” and close the transaction. Plaintiff argues that defendant instead chose a third, extra-contractual, option of seeking to adjourn the closing and to force plaintiff to cure the title defect. This, in plaintiff’s view, constituted a breach of the agreement.
b. Elements of Specific Performance
Plaintiff next contends that defendant cannot meet the requirements of a claim for specific performance. “The elements of a cause of action for specific performance of a contract are that the [buyer] substantially performed its contractual obligations and was willing and able to perform its remaining obligations, that [seller] was able to convey the property, and that there was no adequate remedy at law” (EMF Gen. Contr. Corp. v Bisbee, 6 AD3d 45, 51 [1st Dept 2004]). First, plaintiff asserts that defendant did not substantially perform its contractual obligations because it (a) failed to provide timely notice of the defect; and (b) breached its obligation to elect its remedy. Second, plaintiff maintains that defendant was not ready, willing, and able to perform its remaining obligations because (a) it rejected plaintiff’s tender, and thus was not willing to close “as is” on the “time of the essence closing date”; and (b) in any event defendant could not close because there is no evidence its lender would have permitted it do so with the title plaintiff was able to convey. Third, plaintiff contends that because defendant has “taken the position that Plaintiff could not convey the property it was required to convey under the Agreement at the [time of the essence] closing, it is now precluded from arguing the necessary element that Plaintiff ‘was able to convey the property’ ” (see NYSCEF Doc. No. 20, plaintiff’s brief at 18). Lastly, plaintiff contends that defendant had “adequate remedies at law” — to terminate the agreement and recover the deposit, or to close with such title as plaintiff could convey.
c. Equitable Doctrines
Finally, plaintiff contends that defendant’s first counterclaim is forestalled by the equitable doctrines of estoppel, waiver, and laches. Plaintiff argues that defendant waived and is now estopped from seeking specific performance because it explicitly rejected the air rights fee when given the opportunity in March 2013 and again in January 2014 to close. Plaintiff relied on defendant’s refusal to close by (1) retaining a consultant to negotiate with the City, the party that granted title to the predecessor owner, in an attempt to bargain for a new deed conveying *987 the bottom three floors; and (2) by making substantial improvements to the building. Plaintiff also contends that all four elements of the doctrine of laches have been met by defendant’s year-plus delay in seeking to close and accept the air rights fee (see Dwyer v Mazzola, 171 AD2d 726, 727 [2d Dept 1991] [“The four basic elements of laches are, (1) conduct by an offending party giving rise to the situation complained of, (2) delay by the complainant asserting his or her claim for relief despite the opportunity to do so, (3) lack of knowledge or notice on the part of the offending party that the complainant would assert his or her claim for relief, and (4) injury or prejudice to the offending party in the event that relief is accorded the complainant”]).
d. Cancellation of Notice of Pendency
Plaintiff contends that once the court dismisses the counterclaim for specific performance, the court should also cancel the notice of pendency on the building, and award plaintiff its costs and expenses (see CPLR 6514 [a] [“The court, upon motion of any person aggrieved . . . shall direct any county clerk to cancel a notice of pendency ... if the action has been settled, discontinued or abated”]; CPLR 6514 [c] [“The court, in an order cancelling a notice of pendency under this section, may direct the plaintiff to pay any costs and expenses occasioned by the filing and cancellation, in addition to any costs of the action”]).
2. Defendant’s Arguments
In opposition, defendant maintains that: (1) it has established all of the elements of specific performance; (2) issues of fact exist with regard to plaintiff’s tender of the deed; and (3) the doctrines of estoppel and waiver preclude summary judgment in plaintiff’s favor. In addition, defendant argues against cancelling the notice of pendency. As an alternative, in the event the court grants plaintiff’s motion for summary judgment, defendant moves for summary judgment on its second counterclaim seeking a return of the deposit.
Defendant first contends that it established each element required to compel specific performance. It contends that it performed its obligations under the agreement by paying the deposit, wiring excess monies into the title company account so as to enable it to close on the sale, and providing prompt notice of the title defect pursuant to section 11 of the agreement. Defendant argues that it did not breach any obligation to elect remedies because (1) section 11 (a) automatically provides that its silence equates to an election to accept title as is; and (2) *988 the title defect election period had not yet expired. Second, defendant contends that it was ready, willing, and able to close in that it confirmed at the March 22 closing that it had executed the necessary documents and had the finances in place to close (see NYSCEF Doc. No. 14, amended complaint, exhibit 9 [closing tr], at 5, lines 17-21). Third, defendant states that it has never taken the position that plaintiff was unable to convey the building, but instead simply sought to adjourn the closing for several weeks to allow plaintiff time to cure the title defect. Finally, defendant contends that it has no remedy at law, given that real estate is unique property for which monetary damages are insufficient.
Defendant next contends that at a minimum, genuine issues of material fact exist surrounding plaintiffs tender of the deed to the building at the closing. Specifically, defendant contends that triable factual issues remain regarding (1) whether the deed was tendered prematurely given that it was tendered less than five business days after disclosure of the defect; and (2) whether the tendered deed contained an invalid property description purporting to convey a fee beginning at a 206.008 foot datum level rather than the correct 2.608 foot datum level reflected in the 1968 and 2006 deeds.
In addition, defendant argues that the doctrines of estoppel and waiver preclude summary judgment in favor of plaintiff. Specifically, defendant contends that between March of 2013 and the filing of this action, plaintiff’s negotiations with defendant led defendant to believe that the agreement was still alive, and that both parties desired to get back to the bargaining table with the expectation of closing the deal as soon as possible. Defendant contends that plaintiff has thus waived its right to terminate the agreement, and should be estopped from doing so.
Moreover, defendant urges the court not to cancel the notice of pendency because this action clearly affects title to the building. Further, even if the court were to dismiss the first counterclaim seeking specific performance, the defendant’s second counterclaim over return of the deposit arises out of a real estate purchase agreement.
Lastly, in the alternative, defendant seeks summary judgment on its second counterclaim demanding return of the deposit should the court dismiss its first counterclaim seeking specific performance. Defendant argues that under sections 12 and 20 of the agreement, where the plaintiff fails to convey *989 title in accordance with the agreement, defendant is entitled to a refund of the deposit.
C. Analysis
1. Plaintiffs Motion for Summary Judgment Dismissing the First Counterclaim
Section 20 of the agreement is the only provision that authorizes the remedy of specific performance. This provision applies only where there is an allegation of “willful refusal to perform,” a claim not asserted in the counterclaim. Moreover, any claim pursuant to section 20 is barred because that section requires that any action for specific performance be commenced within 45 days of the aborted closing. There are other substantial reasons why defendant’s counterclaim for specific performance must be dismissed. Those reasons are discussed below.
The agreement provides for only two remedies in the event that defendant identifies a title defect: (1) acceptance of the defective title with no abatement of the purchase price; or (2) termination of the contract and return of the deposit (NYSCEF Doc. No. 14, amended complaint, exhibit 3 [agreement], § 11 [a]). The defendant indisputably chose neither of these two options. Instead, it elected a third, extra-contractual remedy of adjourning the closing date by “three or four weeks” while putting the onus on plaintiff to cure the defect (see NYSCEF Doc. No. 14, amended complaint, exhibit 9 [closing tr] at 7, lines 17-22). Now that plaintiff has changed its position, having hired consultants to negotiate with the City of New York to obtain a deed for the bottom three floors of the building, and made significant improvements to the property (see NYSCEF Doc. No. 47, plaintiff’s reply brief at 2), defendant seeks to take advantage of this progress by claiming entitlement to specific performance in contravention of the limited remedies provided for in the agreement. Plaintiffs motion must be granted and defendant’s cross motion rejected.
This case is very similar to circumstances reviewed in 101123 LLC v Solis Realty LLC (23 AD3d 107, 110 [1st Dept 2005]). There, the parties entered into a contract of sale pursuant to which defendant agreed to sell an apartment building to plaintiff 101123 LLC. The contract of sale contained a restricted remedies clause that was virtually identical to agreement § 11 (a) as follows:
“If Seller is . . . unable to convey title in accordance with the terms of this Contract, then Purchaser may elect either (I) to terminate this *990 Contract, or (ii) to accept such title as Seller may convey and shall complete the transaction as otherwise contemplated by this Contract, but in no event shall Purchaser be entitled to any abatement of the Purchase Price or to any lost profits or other damages, deduction, offset or credit.” (101123 LLC, 23 AD3d at 108.)
Similar to agreement § 20, the contract of sale in 101123 LLC also contained a provision governing seller defaults:
“In the event that Seller . . . defaults under the terms of this Contract, the sole liability of Seller will be to instruct the Escrow Agent to return to Purchaser the Contract Deposit, together with any interest earned thereon, and pay the net title examination costs, without policy, and upon such return being made this Contract shall automatically terminate and be deemed cancelled, and neither party shall thereafter have any further liability or obligation to the other hereunder; provided, however, that if Seller wilfully defaults under this Contract and fails to close on the sale of the Premises in accordance with the terms of this Contract, Purchaser shall have the right to bring an action for specific performance against Seller and exercise any other remedies at law or in equity.” (Id. at 108-109.)
Plaintiff in that case, as here, was unable to deliver title to the subject premises in accordance with the terms of the contract of sale. The question decided by the Appellate Division, First Department was “whether the buyer is limited to the remedies provided for in the parties’ contract, entitling it only to either take the property as it was or to rescind the contract, and precluding specific performance except in the event the seller willfully defaulted on its contractual obligations” (id. at 110). The Court held that
“[w]hen a contract for the sale of real property contains a clause specifically setting forth the remedies available to the buyer if the seller is unable to satisfy a stated condition, fundamental rules of contract construction and enforcement require that we limit the buyer to the remedies for which it provided in the sale contract” (id. at 108).
Accordingly, as there, this court may not “award the buyer specific performance in circumstances other than those in which the parties agreed that it would be available” (id. at 113).
*991 Citing S.E.S. Importers v Pappalardo (53 NY2d 455 [1981]), defendant contends that specific performance should be granted despite a restricted remedies clause. S.E.S. Importers is in-apposite. Under the reasoning discussed by the First Department, and for the reasons discussed below, the instant case is factually distinguishable from S.E.S. Importers. The analysis set forth in 101123 LLC is compelling. It governs the result here.
In 101123 LLC, the Appellate Division observed that “in S.E.S., at the time the action was commenced, the seller had refused to concede that there was a defect in its title, and had not invoked the restricted remedies clause, but rather had demanded that the buyer close on the contract” (101123 LLC, 23 AD3d at 111). “Here, in contrast, the seller conceded from the outset its inability to convey clear title, and invoked from the outset the restricted remedies clause of the contract, leaving the buyer with all the options contemplated in the contract for an inability to convey clear title, as intended” (id. at 111-112). Moreover, “the buyer in S.E.S. had a legally viable right to demand that the seller deliver clear title to the building, which amounts to a right to seek specific performance at that time” (id. at 112). “Here, in contrast, the seller had no viable legal basis upon which to” clear title (id.). “So, unlike the buyer in S.E.S., the buyer in the present action had no colorable claim to specific performance at the time the action was commenced” (id.).
These conclusions ring true in this action as well. The facts in this case are on all fours with 101123 LLC, and are distinguishable from the facts in S.E.S. for the reasons described in 101123 LLC. Accordingly, the First Department’s conclusion that allowing specific performance “would be tantamount to providing carte blanche to buyers to evade limited remedies provisions by the use of delaying tactics based upon unwarranted construction of contract provisions, the tie-up of property, and the institution of meritless litigation intended to ensure sufficient passage of time for evaporation of title deficiencies” is equally applicable to this action (id. at 112 [internal quotation marks and citation omitted]).
Regarding defendant’s contention that it provided notice of the title defect as required under agreement § 11 (a) and therefore should be entitled to the full benefit of the five-day title defect election period provided for under that section, sections 11 (a) and 5 of the agreement are admittedly inconsis *992 tent. Section 5 specifies a hard and fast closing date of March 22, 2013, “time being of the essence.” Agreement § 11 (a) provides for a five-day title defect election period, indeed seeming to contemplate that the period could run from “the last business day prior to the Closing,” thereby theoretically extending at least four days after the March 22, 2013 closing date. However, under the circumstances of this case, this inconsistency is resolved as a matter of law in two manners: one as a matter of contract interpretation, and the other based on defendant’s actions.
New York courts place special significance on provisions rendering “time of the essence” (Grace v Nappa, 46 NY2d 560, 565 [1979] [“When a provision that time is to be of the essence is inserted in a real property contract, the date established as the law day takes on especial significance”]). Agreement § 5 provides for an initial closing date of February 20, 2013. It specifically permits defendant to adjourn the closing to no later than March 22, 2013, “time being of the essence.” Thus, the agreement expressly prohibits any extension of the closing date past March 22, 2013. The specificity in the date chosen by the parties with time being of the essence, precludes reading agreement § 11 (a) as de facto permitting a further extension of that date thereby effectively rewriting the agreement in a manner contrary to the agreed upon law day. Thus, given the clear and explicit importance the parties’ placed on the law day being adjourned to no later than March 22, 2013, the agreement is not susceptible to a reading permitting it to be adjourned further than that date by another clause of the contract that does not clearly provide for such an extension (see Mallad Constr. Corp. v County Fed. Sav. & Loan Assn., 32 NY2d 285, 291 [1973] [“(W)here a question of intention is determinable by written agreements, the question is one of law, appropriately decided ... on a motion for summary judgment. Only where the intent must be determined by disputed evidence or inferences outside the written words of the instrument is a question of fact presented”]).
Even if the court were to accept defendant’s contention that it had four days after the law day to elect its remedy, defendant explicitly made an election. It elected a third, extra-contractual remedy of adjourning the closing date by “three or four weeks” and, contrary to the option available to it under section 11 (a) (ii) of the agreement, putting the onus on plaintiff to cure the defect (see NYSCEF Doc. No. 14, amended *993 complaint, exhibit 9 [closing tr] at 7, lines 17-22).[5] Defendant’s effort to adjourn the closing by “three or four weeks” demonstrates that it was not operating under an understanding that it was entitled under agreement § 11 (a) to four more days to make its election. Rather, it proceeded on the premise that it could force the plaintiff to cure the title defect, a remedy nowhere provided for in the agreement. Accordingly, defendant’s contention that it was entitled to four additional days to make an election under agreement § 11 (a) must be rejected as it has already made its election. Moreover, defendant again bypassed both of its contractual options in agreement § 11 (a) when it declined to either close “as is” or accept a return of its deposit when plaintiffs made that offer months later in January 2014.
Even beyond the contractual limitations on defendant’s available remedies, defendant cannot establish two of the basic elements necessary for specific performance. First, defendant cannot demonstrate that it was ready and willing to fulfill its remaining obligations under the agreement. Its decision to attempt to force an adjournment of the closing by “three or four weeks” and require plaintiff to cure the title defect demonstrates that it was not willing either to accept title as is, or to terminate the agreement and recover its deposit.
Second, defendant cannot demonstrate that plaintiff was able to convey title to the building. Defendant bases its counterclaim for specific performance on the contention that by tendering the defective deed, “Plaintiff fail[ed] to convey title to the [building] in accordance with the provisions of the Agreement” (see NYSCEF Doc. No. 15, answer with counterclaims, ¶ 157). This constitutes an acknowledgment by defendant that at the time of closing, plaintiff was legally incapable of conveying title to the building as anticipated by the agreement. It is undisputed that plaintiff continues to hold the same deed it held on March 22, 2013. Thus, on the one hand, defendant argues that it was not required to close on March 22, 2013 because plaintiff failed to tender an appropriate deed, while on the other hand contending now (coincidentally after plaintiff appears to have made some progress in negotiating with the *994 City to obtain a new deed) that plaintiff must convey that very deed. Defendant’s opportunistic stance is rejected.
2. Cancellation of the Notice of Pendency
Because the court will grant plaintiff’s motion for summary judgment dismissing defendant’s specific performance counterclaim, the court will also grant that portion of the motion seeking cancellation of the notice of pendency. A notice of pendency is only proper in actions “in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property” (CPLR 6501). CPLR 6514 (a) provides that the court “shall direct any county clerk to cancel a notice of pendency, if . . . [such] action has been settled, discontinued or abated.” Upon dismissal of the specific performance counterclaim, no portion of this case affects “title to, or the possession, use or enjoyment of” the building. Nevertheless, defendant contends that its second counterclaim for return of the deposit warrants maintaining the notice of pendency. However, whether or not the deposit is required to be returned to defendant does not “affect title to” the building.
Similarly, “[t]he court, in an order cancelling a notice of pendency under this section, may direct the plaintiff [or in this case the defendant as counterclaim plaintiff] to pay any costs and expenses occasioned by the filing and cancellation, in addition to any costs of the action” (CPLR 6514 [c]). This aspect of the motion will be held in abeyance until the completion of the action.
3. Defendant’s Cross Motion on its Second Counterclaim
As to defendant’s cross motion for summary judgment on its second counterclaim for return of the deposit, defendant argues that “under Sections 12 and 20 of the Agreement, where [the] Seller fails to convey title in accordance with the terms of the Agreement, Purchaser is entitled to a refund of its Deposit from the Escrow Agent as a matter of law” (NYSCEF Doc. No. 41, defendant’s opp brief at 25). These sections of the agreement deal with return of the deposit based on the plaintiff’s default or inability to perform under the agreement. Here, defendant’s election of a remedy not provided for in agreement § 11 (a) constitutes a default under the agreement and raises issues of fact with regard to defendant’s entitlement to return of the deposit under such circumstances. Moreover, to the extent that both parties contend that equitable doctrines and considerations weigh in their favor and entitle them to the deposit (including defendant’s failure to elect to terminate the *995 contract and receive a return of the deposit, and refusal to accept a return of the deposit in Jan. 2014), there are disputed issues of fact. Accordingly, defendant’s motion for summary judgment on its counterclaim for return of the deposit is denied.
Accordingly, it is hereby ordered that plaintiff’s motion for summary judgment dismissing defendant’s first counterclaim for specific performance is granted; and it is further ordered that defendant’s cross motion for summary judgment on its second counterclaim is denied; and it is further ordered that the Clerk of the Court is hereby directed to cancel the notice of pendency filed by Highbridge Entities LLC in connection with the premises located at 1131-1137 Ogden Avenue, Bronx, New York; and it is further ordered that plaintiff’s request for a stay discovery pending the hearing on this motion is denied as academic.

. The facts discussed here are drawn from the parties’ respective rule 19-a statements and counter statements, and are undisputed unless otherwise noted (22 NYCRR 202.70 [g]).

. The agreement defines the property to be conveyed as “the land more particularly described on Exhibit ‘C’ ” (NYSCEF Doc. No. 14, amended complaint, exhibit 3 [agreement], ¶ 1 [emphasis omitted]). Exhibit C to the agreement erroneously lists the elevation of the “datum level” as 206.008 feet above sea level, whereas the correct elevation as set forth in the 2006 and 1968 deeds is 2.608 feet (see NYSCEF Doc. No. 14, amended complaint, exhibit 3 [agreement]). This scrivener’s error does not create a genuine issue of material fact sufficient to affect disposition of the motion.

. It is undisputed that the defect in title in this action is not one of the “Permitted Exceptions” provided for in the agreement.

. Defendant contends that section 11 (a) provides for a form of specific performance in that it permits defendants to close “as is” in the event that there is a defect in title (see NYSCEF Doc. No. 42, defendant’s response to plaintiff’s rule 19-a statement, ¶ 30).

. For this reason, defendant cannot rely on agreement § 11 (a)’s automatic election clause (i.e., where defendant is silent, it is deemed to have automatically elected to accept title subject to the defect in title). Defendant was not silent — it expressly elected an option diametrically opposite to accepting title subject to the defect, albeit an extra-contractual option.