W Equities Acquisitions, LLC v Wyckoff Hgts. Props., LLC (2021 NY Slip Op 00324)





W Equities Acquisitions, LLC v Wyckoff Hgts. Props., LLC


2021 NY Slip Op 00324


Decided on January 20, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 20, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, A.P.J.
CHERYL E. CHAMBERS
ANGELA G. IANNACCI
LINDA CHRISTOPHER, JJ.


2018-05267
 (Index No. 502292/16)

[*1]W Equities Acquisitions, LLC, appellant-respondent,
v
Wyckoff Heights Properties, LLC, respondent- appellant.


Goldberg Weprin Finkel Goldstein LLP, New York, NY (Matthew Hearle of counsel), for appellant-respondent.
Jaspan Schlesinger LLP, Garden City, NY (Christopher E. Vatter and Steven R. Schlesinger of counsel), for respondent-appellant.



DECISION & ORDER
In an action, inter alia, for specific performance of a contract for the sale of real property, the plaintiff appeals, and the defendant cross-appeals, from a judgment of the Supreme Court, Kings County (Lawrence S. Knipel, J.), dated March 28, 2018. The judgment, insofar as appealed from, upon so much of an order of the same court dated November 17, 2017, as granted that branch of the defendant's motion which was for summary judgment dismissing the complaint and denied the plaintiff's cross motion for summary judgment on the complaint and dismissing the defendant's counterclaim to retain the down payment in the sum of $190,000, plus interest, as liquidated damages, is in favor of the defendant and against the plaintiff dismissing the complaint. The judgment, insofar as cross-appealed from, upon so much of the order dated November 17, 2017, as denied that branch of the defendant's motion which was for summary judgment on its counterclaim, directed that the counterclaim not be marked disposed until such time as the counterclaim is adjudicated or otherwise settled.
ORDERED that the judgment is affirmed insofar as appealed from; and it is further,
ORDERED that the judgment is reversed insofar as cross-appealed from, on the law, that branch of the defendant's motion which was for summary judgment on its counterclaim to retain the down payment in the sum of $190,000, plus interest, as liquidated damages, is granted, the order dated November 17, 2017, is modified accordingly, and the matter is remitted to the Supreme Court, Kings County, for the entry of an appropriate amended judgment; and it is further,
ORDERED that one bill of costs is awarded to the defendant.
In May 2015, the plaintiff agreed to purchase from the defendant certain real property located on Wyckoff Avenue in Brooklyn. At the time the contract was executed, the premises were occupied by four tenants, who were protected under rent stabilization laws and could only be asked to vacate voluntarily. Pursuant to the contract, the defendant was required to deliver the premises free of any tenancies. The defendant was able to obtain surrender agreements from two of the four tenants, but the two remaining tenants declined the defendant's offers to relocate.
In a letter dated December 23, 2015, the plaintiff's counsel declared a time-of-the-essence closing date of February 10, 2016. Prior to the scheduled closing date, the defendant responded that it had made numerous unsuccessful attempts to obtain surrender agreements from the two holdout tenants, and as a result, the defendant would be "unable to deliver the premises in accordance with the terms of this contract." The defendant then invoked section 13.02 of the contract, offering the plaintiff the choice of either accepting such title as the defendant was able to convey, with a credit no greater than the maximum amount specified in the contract, or terminating the contract with a refund of the down payment and reimbursement of the net cost of title examination. The plaintiff rejected the defendant's invocation of section 13.02 and insisted on proceeding to closing. Ultimately, the transaction was not consummated on the scheduled closing date.
By summons and complaint dated February 18, 2016, the plaintiff commenced this action against the defendant, inter alia, for specific performance of the contract. The defendant joined issue and asserted a counterclaim to retain the down payment in the sum of $190,000, plus interest, as liquidated damages for breach of contract. The defendant subsequently moved for summary judgment dismissing the complaint and on its counterclaim, and the plaintiff cross-moved for summary judgment on the complaint and dismissing the counterclaim. In an order dated November 17, 2017, the Supreme Court denied the plaintiff's cross motion and granted that branch of the defendant's motion which was for summary judgment dismissing the complaint, but denied that branch of the defendant's motion which was for summary judgment on the counterclaim, determining that triable issues of fact existed. The court thereafter entered judgment upon the order. The plaintiff appeals, and the defendant cross-appeals.
At the heart of this dispute is the interpretation of section 13.02 of the contract, which provides, in pertinent part: "If Seller shall be unable to convey title to the Premises at the Closing in accordance with the provisions of this contract . . . Purchaser, nevertheless, may elect to accept such title as Seller may be able to convey with a credit against the monies payable at the Closing equal to the reasonably estimated cost to cure the same (up to the Maximum Expense described below), but without any other credit or liability on the part of Seller. If Purchaser shall not so elect, Purchaser may terminate this contract and the sole liability of Seller shall be to refund the Down payment to Purchaser and to reimburse Purchaser for the net cost of title examination." The "Maximum Expense" referenced in section 13.02 is set out in Schedule D of the contract, which requires the defendant to expend up to a maximum amount of $75,000 to cure title defects.
As a threshold matter, in light of the defendant's obligation to deliver the premises "free of all tenancies," the inability to obtain surrender agreements from two of the four tenants would constitute a title defect (see Segal v Kulch, 13 AD2d 1011, 1012, affd 11 NY2d 834; see also S.E.S. Importers, Inc. v Pappalardo, 53 NY2d 455, 463). Thus, contrary to the plaintiff's contention, section 13.02 of the contract was not wholly inapplicable to the circumstances presented.
However, in order to trigger the application of section 13.02 of the contract, which is conditioned on the defendant's inability to convey title, the defendant was required to prove the existence of a situation beyond the parties' control, coupled with proof that the defendant acted in good faith in attempting to convey title in accordance with the terms of the contract (see SJSJ Southold Realty, LLC v Fraser, 150 AD3d 920, 921; Karl v Kessler, 47 AD3d 681, 682; see also 101123 LLC v Solis Realty LLC, 23 AD3d 107). Contrary to the plaintiff's contention, the defendant was not required to establish impossibility of performance (see 407 E. 61st Garage v Savoy Fifth Ave. Corp., 23 NY2d 275, 281).
Here, the defendant tendered evidence that it met with the two holdout tenants "a number of times," ultimately offering each of them $75,000 to surrender their apartments. The defendant also offered to pay for all deposits, moving fees, and rent for one year, as well as assistance in finding an apartment in the same neighborhood for a similar rent. The defendant further stated that, in or around January 2016, it met with the two tenants and their legal counsel. At that meeting, the attorney for the tenants stated that she was advising her clients not to execute the surrender agreements because they would lose certain government benefits, would not be able [*2]to find comparable apartments with similar rents, and would have to pay income tax on the money being offered. According to the defendant, the two tenants thereafter "unequivocally refused to move out or entertain any offers . . . to surrender their tenancies."
The plaintiff, in opposition to the defendant's motion, did not challenge any of the specific factual assertions made by the defendant regarding the extent of its efforts to obtain surrender agreements from the two remaining tenants, but argued only that those efforts were insufficient as a matter of law. We disagree, and determine that the defendant established, prima facie, that it made a good faith effort to convey title in accordance with the terms of the contract (see SJSJ Southold Realty, LLC v Fraser, 150 AD3d at 921), and that its inability to do so justified its invocation of section 13.02, thereby requiring the plaintiff to elect either to cancel the contract and receive a return of its down payment, or accept the property with the remaining tenancies and a credit of up to $75,000—a choice the plaintiff refused to make (see Mehlman v 592-600 Union Ave. Corp., 46 AD3d 338; see also M & E 73-75, LLC v 57 Fusion LLC, 189 AD3d 1; 101123 LLC v Solis Realty LLC, 23 AD3d 107). In opposition to the defendant's prima facie showing, the plaintiff failed to raise a triable issue of fact. The plaintiff's belated attempt, for the first time on appeal, to controvert the quality and quantity of the factual evidence relied upon by the defendant to establish the extent of its efforts is not properly before us.
Accordingly, the Supreme Court properly granted that branch of the defendant's motion which was for summary judgment dismissing the complaint, and properly denied that branch of the plaintiff's cross motion which was for summary judgment on the complaint.
The Supreme Court should have granted that branch of the defendant's motion which was for summary judgment on its counterclaim. Because the defendant acted within its rights pursuant to section 13.02 of the contract, it is the plaintiff—not the defendant—which breached the contract by failing to elect one of the two remedies available to it under section 13.02. Moreover, since the defendant seeks only to retain the down payment as liquidated damages (see Maxton Bldrs. v Lo Galbo, 68 NY2d 373, 378), there are no triable issues of fact to be decided.
In light of our determination, we need not reach the defendant's remaining contention.
MASTRO, A.P.J., CHAMBERS, IANNACCI and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court