Special Corp. v 3RF, LLC (2024 NY Slip Op 04157)

Special Corp. v 3RF, LLC

2024 NY Slip Op 04157

Decided on August 7, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 7, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

FRANCESCA E. CONNOLLY, J.P.
JOSEPH J. MALTESE
WILLIAM G. FORD
LAURENCE L. LOVE, JJ.

2023-02047
 (Index No. 520217/22)

[*1]Special Corp., appellant, 
v
3RF, LLC, respondent.

Law Office of Adam D. Glassman, P.C., Lloyd Harbor, NY, for appellant.
Charles E. Boulbol, P.C., New York, NY, for respondent.

DECISION & ORDER
In an action, inter alia, for specific performance of a contract for the sale of real property, the plaintiff appeals from an order of the Supreme Court, Kings County (Carolyn E. Wade, J.), dated January 13, 2023. The order, insofar as appealed from, in effect, granted those branches of the defendant's motion which were for summary judgment dismissing the first through third causes of action, to cancel a notice of pendency filed against the subject property, and for summary judgment on its counterclaim to retain a down payment as liquidated damages.
ORDERED that the order is affirmed insofar as appealed from, with costs.
In April 2022, the plaintiff and the defendant entered into a contract of sale, by which the plaintiff was to pay a total purchase price of $3,325,000 to purchase a building located in Brooklyn from the defendant. The plaintiff tendered a down payment of $200,000 upon execution of the contract. The transaction failed to close.
The plaintiff filed a notice of pendency against the property and commenced this action seeking, inter alia, specific performance of the contract and an abatement in the contract price (first through third causes of action). The defendant interposed an answer in which it asserted, among other things, a counterclaim to retain the down payment as liquidated damages. Thereafter, the defendant moved, inter alia, for summary judgment dismissing those causes of action, to cancel the notice of pendency filed against the property, and for summary judgment on its counterclaim. In an order dated January 13, 2023, the Supreme Court, in effect, granted those branches of the defendant's motion which were for summary judgment dismissing the first through third causes of action, to cancel the notice of pendency filed against the property, and for summary judgment on the counterclaim. The plaintiff appeals.
Contrary to the plaintiff's contention, the Supreme Court properly, in effect, granted those branches of the defendant's motion which were for summary judgment dismissing the first through third causes of action. A motion for summary judgment "shall be granted if, upon all the papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment in favor of any party" (CPLR 3212[b]; see Alvarez v Prospect Hosp., 68 NY2d 320, 325).
Section 13.02 of the contract provides, in pertinent part, "If Seller shall be unable (as [*2]opposed to unwilling) to convey title to the Premises at the Closing in accordance with the provisions of this Agreement, Purchaser, nevertheless, may elect to accept such title as Seller may be able to convey without any credit against the monies payable at the Closing or liability on the part of Seller. If Purchaser shall not so elect, Purchaser may terminate this Agreement, which termination shall be subject to the provisions of § 13.06. Seller shall not be required to bring any action or proceeding or to incur any expense in excess of the Maximum Expense specified in Schedule D to cure any title defect." Section 13.06 of the contract limits the purchaser's remedies to the termination of the contract pursuant to section 13.02 to the refund of the down payment. The "Maximum Expense" referenced in section 13.02 is set forth in Schedule D of the contract, which requires the defendant to expend up to a maximum amount of $10,000 to cure title defects.
In section 4.01 of the contract, the defendant represented that it had provided to the plaintiff accurate information concerning any written leases for the current tenants in the building. A rider to the contract further required the defendant to deliver lease modifications and estoppel letters to the plaintiff from each of the current tenants. It is undisputed that the defendant was unable to do so, as there was one holdout tenant that refused to sign. It is also undisputed that the holdout tenant had signed a rider to its lease in May 2021 that extended its tenancy, which rider was not attached to the contract or provided to the plaintiff until after the execution of the contract. It is unclear from the record what effect, if any, this previously undisclosed rider had on the holdout tenant's refusal to execute the lease modification and estoppel letter, but the end result was that the defendant was unable to provide these documents to the plaintiff. No matter the reason, the inability of the defendant to deliver the lease modification and estoppel letter from the holdout tenant constituted a title defect (see W Equities Acquisitions, LLC v Wyckoff Hgts. Props., LLC, 190 AD3d 881, 883; Segal v Kulch, 13 AD2d 1011, 1012, affd 11 NY2d 834), which triggered section 13.02 of the contract.
In a letter dated June 29, 2022, the plaintiff demanded an abatement in the contract price, citing the undisclosed lease rider and the defendant's inability to deliver the lease modification and estoppel letter for the holdout tenant. The defendant responded to the letter by offering three potential remedies pursuant to section 13.02—the return of the plaintiff's security deposit and cancellation of the contract, an offer to spend up to $10,000 to convince the holdout tenant to sign the relevant documents, or a $20,000 reduction in the contract price. In response, the plaintiff indicated that it considered the defendant's inability to convey title in accordance with the provisions of the contract as an anticipatory breach, and stated that it would be commencing an action seeking specific performance of the contract with an abatement of the purchase price. The defendant responded that the plaintiff, by rejecting the terms of the contract, had chosen to terminate the agreement.
Here, the record reflects that, because the plaintiff refused to accept title to the building with the title defects, and because the plaintiff failed to agree to allow the defendant to further negotiate with the holdout tenant, its sole remaining remedy pursuant to section 13.02 was to terminate the contract. Pursuant to section 13.06, the only relief available to the plaintiff upon termination of the contract was a return of its down payment. Contractually, the plaintiff was not entitled to specific performance or an abatement in the contract price. Accordingly, the Supreme Court properly, in effect, granted those branches of the defendant's motion which were for summary judgment dismissing the first through third causes of action.
Further, the record indicates that the defendant acted within its rights pursuant to section 13.02, and it is the plaintiff—not the defendant—that breached the contract by failing to elect one of the remedies offered to it by the defendant pursuant to section 13.02 (see W Equities Acquisitions, LLC v Wyckoff Hgts. Props., LLC, 190 AD3d at 883). Section 13.04 of the contract indicates that, upon the purchaser's default, the sole remedy of the seller shall be to retain the down payment as liquidated damages. Therefore, the Supreme Court properly granted that branch of the defendant's motion which was for summary judgment on its counterclaim to retain the down payment as liquidated damages.
Upon, in effect, granting those branches of the defendant's motion which were for summary judgment dismissing the first through third causes of action, the Supreme Court properly granted that branch of the defendant's motion which was to cancel the notice of pendency filed against the property (see Gallagher Removal Serv., Inc. v Ducknowski, 179 AD2d 622, 623).
The plaintiff's remaining contentions either need not be reached in light of our determination or are not properly before this Court.
CONNOLLY, J.P., MALTESE, FORD and LOVE, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court